**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIMONA HOWE, | |
| Plaintiff, | Civil Action No. 13-1273 (BAH) |
| v. | Judge Beryl A. Howell |
| THE EMBASSY OF ITALY, | |
| Defendant. | |

**MEMORANDUM OPINION**

The plaintiff, Simona Howe (the "plaintiff"), brings this action against her employer, the

Embassy of Italy (the "defendant"), seeking $141,134.00 in damages under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), for the defendant's alleged

underfunding of the plaintiff's retirement benefits. *See* Compl. ¶¶ 5, 9–10, 25, ECF No. 1.

Pending before the Court is the defendant's Motion to Dismiss, pursuant to Federal Rules of

Civil Procedure 12(b)(1) for lack of subject matter jurisdiction; 12(b)(2) for lack of personal

jurisdiction; 12(b)(5) for insufficient service of process; and 12(b)(6) for failure to state a claim

upon which relief can be granted. *See* Def.'s Mot. Dismiss ("Def.'s Mot.") at 1, ECF No. 10.

For the following reasons, the defendant's motion is granted and this case is dismissed under

Federal Rules of Civil Procedure 12(b)(2) and (5).

I.      **BACKGROUND**

The defendant is located in Washington, D.C., Compl. ¶2, and the plaintiff is a Virginia

resident, who has worked for the defendant since 1988 "as a press secretary and translator," *id.*

¶¶ 1, 6.  When the plaintiff was first hired, she was a Canadian citizen "working in the United

States as a Green Card holder." *Id.* ¶ 7.[1]  For employees like the plaintiff, "who were neither

citizens of the United States nor Italy," the defendant, in 1988, established a pension plan [the

"Plan"] with Aetna Life Insurance and Annuity Company that was designed to approximate

Social Security benefits. *Id.* ¶¶ 9–12.  The defendant and the plaintiff were to contribute equally

to the Plan. *See id.* ¶¶ 11–12.

When the plaintiff first began participating in the Plan, she signed a "Participation

Agreement in the Deferred Compensation Plan" (the "Participation Agreement") that set out the

"amount of contribution to the Plan by both [the plaintiff] and [the defendant]." *Id.* ¶¶ 13–14.

The plaintiff avers that the "calculations used to arrive at the contribution amount in the

Participation Agreement were calculated, incorrectly, by the Head of Administration at the

Embassy of Italy," *id.* ¶ 15, and that this miscalculation resulted in the plaintiff and defendant

each contributing only "50% of the[] required amounts," *id.* ¶ 16.  The plaintiff alleges that she

became "aware of the miscalculation and resulting shortfall" in "August 2010," *id.* ¶ 18, but that

the defendant "knew or should have known of the shortfall immediately by looking at the

differences in contribution between what was contributed to [the plaintiff's] account and the

accounts of other employees," *id.* ¶ 19.

On August 24, 2010, the plaintiff "requested that the [defendant] remedy the shortfall,"

*id.* ¶ 21, but the defendant "did not comply with her request and failed to provide her with

relevant documents, claiming that they had been lost," *id.* ¶ 22.  The plaintiff arranged for the

administrator of the plaintiff's retirement benefits plan to "perform calculations necessary to

determine the shortfall amount," *id.* ¶ 23, and, based on those calculations, the plaintiff alleges

---

[1] The Complaint does not specify whether the plaintiff is currently a Canadian citizen, but her citizenship is ultimately immaterial to resolving the pending motion.

she "has been damaged in the amount of $141,134.00, which represents the $117,134.00 shortfall and the 20% penalty as authorized by [ERISA]," *id.* ¶ 25.

The plaintiff filed this action on August 20, 2013, making two claims: Count I for violation of ERISA, 29 U.S.C. § 1132, based on the defendant's alleged "fail[ure] to fund the Plan in accordance with its agreement with [the plaintiff]," *id.* ¶¶ 26–35; and Count II, styled a "Request for Clarification of Future Benefits Pursuant to [29] U.S.C. § 1132," pursuant to which the plaintiff "seeks to have her future benefits under the Plan clarified, including the specific contribution amounts the Embassy of Italy is required to contribute to the Plan," *id.* ¶¶ 36–39.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of "establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant." *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990) (citing *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1984), *overruled on other grounds by Kauffman v. Anglo-Am. Sch. of Sofia,* 28 F.3d 1223, 1226 (D.C. Cir. 1994)); *Williams v. Romarm, S.A.*, 756 F.3d 777, 785 (D.C. Cir. 2014). The plaintiff need only make a prima facie showing that the court has personal jurisdiction. 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1351 (3d ed. 2014); *see Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) ("a court ordinarily demands only a prima facie showing of jurisdiction by the plaintiffs"). Similarly to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "the uncontroverted allegations of the complaint must be taken as true, and the court will draw all reasonable inferences in plaintiff's favor." William W. Schwarzer *et al.*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 3:412 (2013); *see Walden v. Fiore*, 134 S. Ct.

1115, 1119 n.2 (2014) (accepting jurisdictional allegations in complaint as true at motion to

dismiss stage). At the same time, however, a plaintiff must provide sufficient factual allegations,

apart from mere conclusory assertions, to support the exercise of personal jurisdiction over the

defendant. *See Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C.

Cir. 2001) (noting the "general rule that a plaintiff must make a prima facie showing of the

pertinent jurisdictional facts") (internal quotation marks and alterations omitted); *First Chi. Int'l

v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) ("Conclusory statements . . . do not

constitute the *prima facie* showing necessary to carry the burden of establishing personal

jurisdiction.") (internal quotation marks and citation omitted); *Naartex Consulting Corp. v. Watt*,

722 F.2d 779, 787 (D.C. Cir. 1983) (same); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d

34, 42 (D.D.C. 2003) (stating plaintiff "cannot rely on conclusory allegations" to establish

personal jurisdiction).

Unlike a motion to dismiss under Rule 12(b)(6), the court "may consider materials

outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."

*Jerome Stevens Pharms., Inc. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court "may

receive and weigh affidavits and any other relevant matter to assist it in determining the

jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C.

2000) (internal quotation marks and citation omitted); *see also Mwani*, 417 F.3d at 7 (holding

that plaintiffs "may rest their [jurisdictional] argument on their pleadings, bolstered by such

affidavits and other written materials as they can otherwise obtain"). Any "factual discrepancies

appearing in the record must be resolved in favor of the plaintiff," however. *Crane,* 894 F.2d at

456 (citing *Reuber,* 750 F.2d at 1052); *see also Barot v. Embassy of Republic of Zam.*, No. 13-

451, 2014 WL 1400849, at *3 (D.D.C. Apr. 11, 2014).

**B.      Federal Rule of Civil Procedure 12(b)(5)**

It is well settled that "[b]efore a federal court may exercise personal jurisdiction over a

defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital*

*Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a

named defendant."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350

(1999).  This is because service is necessary, but not sufficient, to allow a court to exercise

personal jurisdiction over a defendant.  *See Mwani*, 417 F.3d at 8 (noting that "service of process

does not alone establish personal jurisdiction").  Indeed, "[b]efore a court may exercise personal

jurisdiction over a defendant, there must be more than notice to the defendant . . . there also must

be authorization for service of summons on the defendant and a constitutionally sufficient

relationship between the defendant and the forum."  *Id.* (internal quotation marks and citations

omitted; alteration in original).

When sufficiency of service is challenged, the burden is on the plaintiff to demonstrate

that she has effected service properly.  *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012)

(noting under Federal Rule of Civil Procedure 4 that "the plaintiff has the burden to demonstrate

that the procedure employed to deliver the papers satisfies the requirements" of proper service)

(internal quotation marks omitted); *see also* 4A Wright & Miller § 1083 ("[T]he party on whose

behalf service of process is made has the burden of establishing its validity . . . to do so, she must

demonstrate that the procedure employed to deliver the papers satisfied the requirements of the

relevant portions of Rule 4 and any other applicable provision of law.").  Insufficient service of

process on a defendant "warrant[s] the court's dismissing [the plaintiff's claims] without

prejudice" under Federal Rule of Civil Procedure 12(b)(5).  *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).

## III.    DISCUSSION

The defendant makes three jurisdictional arguments predicated on the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. § 1602, *et seq.*, in support of its motion to dismiss. First, the defendant argues that this Court lacks subject matter jurisdiction over this lawsuit because, as a foreign sovereign, the defendant is immune from suit under the FSIA, 28 U.S.C. § 1604.  *See* Mem. Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 1, ECF No. 10-1.  Second, even if the defendant were amenable to suit under an exception to the FSIA, 28 U.S.C. §§ 1605–1607, the defendant further argues that dismissal is warranted for improper service.  *See id.*  Third, and related to the latter contention, the defendant contends that, since the FSIA grants personal jurisdiction over foreign entities only when they have been properly served and are not immune from suit, under 28 U.S.C. § 1330, improper service removes the authority of the Court to exercise personal jurisdiction over the defendant.  *Id.*[2]  The Court agrees with the defendant that the plaintiff's failure to effect proper service on the defendant is fatal to the instant Complaint, which must, therefore, be dismissed for lack of personal jurisdiction and improper service, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(5).

### A.    Personal Jurisdiction Under The FSIA

The FSIA confers on foreign states "immune[ity] from the jurisdiction of the courts of the United States," except as expressly provided in that Act.  28 U.S.C. § 1604.  "[I]mmunity involves protection from suit, not merely a defense to liability."  *Foremost-McKesson, Inc. v.*

---

[2] In addition to the jurisdictional arguments, the defendant contends that the plaintiff's claims are barred by the applicable statute of limitations and that the Plan providing benefits to the plaintiff is not covered under ERISA. Def.'s Mem. at 1–2.  Since this motion is resolved on other grounds, the Court need not consider these alternative bases for dismissal of the Complaint.

*Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990). Consequently, resolving the

immunity issue at the outset of a case against a foreign sovereign is "particularly important" in

order for the court to "'satisfy itself of its authority to hear the case.'" *Id.* (quoting *Prakash v.*

*Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984))

The FSIA, "if it applies, is the 'sole basis for obtaining jurisdiction over a foreign state in

federal court.'" *Samantar v. Yousuf*, 560 U.S. 305, 314 (2010) (quoting *Argentine Republic v.*

*Amerada Hess Shipping Corp.* (*Amerada Hess*), 488 U.S. 428, 439 (1989)). This law provides a

"'comprehensive set of legal standards governing claims of immunity in every civil action

against a foreign state.'" *Republic of Arg. v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2255 (2014)

(quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983)). The FSIA's

"'interlocking provisions' . . . compress subject-matter jurisdiction and personal jurisdiction into

a single, two-pronged inquiry: (1) whether service of the foreign state was accomplished

properly, and (2) whether one of the statutory exemptions to sovereign immunity applies," *Abur*

*v. Republic of Sudan*, 437 F. Supp. 2d. 166, 171–72 (D.D.C. 2006) (quoting *Mar. Int'l Nominees*

*Estab't v. Republic of Guinea*, 693 F.2d 1094, 1099 (D.C. Cir. 1982)) (citation omitted); *see also*

*Odhiambo v. Republic of Kenya*, No. 13-7100, 2014 WL 4251156, at *1 (D.C. Cir. Aug. 29,

2014) ("The FSIA exceptions are exhaustive; if no exception applies, the district court has no

jurisdiction."); *Williams*, 756 F.3d 777, 781–82 (D.C. Cir. 2014) ("In other words, under the

[FSIA], subject matter jurisdiction plus service of process equals personal jurisdiction." (quoting

*GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012)). Since the plaintiff's suit

founders on the first prong of this inquiry, the Court has no need to reach the second.

**B.      Proper Service Under The FSIA**

Service of process pursuant to the FSIA is governed by 28 U.S.C. § 1608, which provides

two avenues to serve a foreign sovereign, depending on the type of entity to be served.  A

"foreign state or [its] political subdivision" must be served pursuant to 28 U.S.C. § 1608(a),

while "an agency or instrumentality of a foreign state" must be served pursuant to 28 U.S.C. §

1608(b).  Four hierarchical methods of service are outlined in § 1608(a), which are to be

followed "in descending order of preference—meaning that a plaintiff must attempt service by

the first method (or determine that it is unavailable) before proceeding to the second method, and

so on." *Opati v. Republic of Sudan*, 978 F. Supp. 2d 65, 67 (D.D.C. 2013).  The preferred

method is "delivery of the summons and complaint 'in accordance with any special arrangement

for service between the plaintiff and the foreign state.'" *Id.* (quoting 28 U.S.C. § 1608(a)(1)).

Absent such an arrangement, plaintiffs may follow the methods delineated in "an applicable

international convention on the service of judicial documents," or, failing that, by arranging for

the Clerk of the Court to mail the "summons, complaint, and a notice of suit" along with versions

of the documents translated into the "official language of the foreign state," to the "head of the

ministry of foreign affairs of the foreign state concerned." *Id.* (quoting 28 U.S.C. § 1608(a)(2)-

(3)).  As a last resort, a plaintiff may "request that the clerk of the court dispatch" the same

documents required by 28 U.S.C. § 1608(a)(3) to the United States Secretary of State, who will

then transmit the documents to the foreign state through diplomatic channels.  *See id.* (citing 28

U.S.C. § 1608(a)(4)).

By contrast, the requirements to serve an "agency or instrumentality" of a foreign state

under 28 U.S.C. § 1608(b) are less rigorous.  This FSIA provision outlines three hierarchical

methods of service.  The first avenue under § 1608(b) is, again, service pursuant to any pre-

8

existing agreement between the plaintiff and defendant.  *See* 28 U.S.C. § 1608(b)(1).  Absent

such an agreement, a plaintiff may effect service "by delivery of a copy of the summons and

complaint either to an officer, a managing or general agent, or to any other agent authorized by

appointment or by law to receive service of process in the United States."  *See id.* § 1608(b)(2).

If a plaintiff is unable to effect service under the first or second method, the plaintiff may do so

using a variety of methods that are "reasonably calculated to give [the agency or instrumentality]

actual notice" of the suit.  *See id.* § 1608(b)(3).

  If a plaintiff fails to perfect service as required under the applicable provision of § 1608,

the court lacks personal jurisdiction over the foreign entity pursuant to 28 U.S.C. § 1330(b),

regardless of whether the foreign sovereign would otherwise be amenable to suit under one of

the delineated exceptions to the FSIA.  *See* 28 U.S.C. § 1330(c).  An early critical inquiry into

any suit brought pursuant to the FSIA, therefore, is whether service was effected using the proper

procedures outlined in 28 U.S.C. § 1608.

  Consequently, in suits brought pursuant to the FSIA, traditional tenets of personal

jurisdiction apply differently.  Since foreign sovereigns are not "persons" within the meaning of

the Fifth Amendment's Due Process Clause, a court need not determine whether the exercise of

personal jurisdiction over the foreign sovereign conforms to Constitutional limits.  *See GSS Grp.

Ltd.*, 680 F.3d at 813.  Instead, personal jurisdiction may be exercised over the foreign sovereign

so long as an exception to the sovereign's absolute immunity, codified in 28 U.S.C. §§ 1605–07

applies and the foreign sovereign has been served properly under 28 U.S.C. § 1608.  *See

Williams*, 756 F.3d at 781–82.

## C. The Instant Defendant Is A "Foreign State" For FSIA Purposes

Since the appropriate method of service is dependent upon whether a foreign sovereign is a "foreign state or [its] political subdivision" or a foreign sovereign's "agency or instrumentality," a court must determine into which category a defendant falls before it can determine if service was effected properly. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994). If the foreign sovereign is subject to § 1608(a), the service requirements must be adhered to rigorously. *See id.* at 154; *Magness v. Russian Fed'n*, 247 F.3d 609, 615 (5th Cir. 2001) ("[T]he provisions for service of process upon a foreign state or political subdivision of a foreign state outlined in section 1608(a) can only be satisfied by strict compliance."). In the instant matter, the plaintiff alleges she effected service pursuant to § 1608(b) and makes no attempt to show compliance with § 1608(a). *See* Pl.'s Opp'n Def.'s Mot. Dismiss at 10–11, ECF No. 11. This omission is ultimately fatal to the plaintiff's claim since the defendant is a "foreign state" for the purposes of the FSIA and must be served pursuant to 28 U.S.C. § 1608(a). The plaintiff has plainly failed to sustain her burden to prove service was effected properly.

In *Transaero, Inc.*, the D.C. Circuit adopted a "categorical" approach to determining if a foreign entity is a "foreign state" or an "instrumentality" under the FSIA. 30 F.3d at 151. Specifically, the D.C. Circuit held that if "the defendant is the type of entity 'that is an integral part of a foreign state's political structure,'" it is a "foreign state." *See id.* (citation omitted). The *Transaero, Inc.* court noted that other portions of the FSIA, particularly the venue provisions codified in 28 U.S.C. § 1391, bolstered this view because venue was expressly contemplated where "the agency or instrumentality is licensed to do business or is doing business," a circumstance that would not apply to foreign states but could apply to foreign agencies or

instrumentalities.  *See id.* at 152.  The D.C. Circuit noted that such a categorical approach,

delineating between "governmental" and "commercial" entities, would "benefit all concerned"

by "ensuring the[] prompt and orderly commencement" of actions.  *See id.* at 153.

Although the entity at issue in *Transaero, Inc.* was a foreign sovereign's Air Force, *id.* at

149, subsequent district court opinions applying the *Transaero, Inc.* rationale to embassies have

found uniformly that embassies are "integral part[s] of a foreign state's political structure,"

*Transaero, Inc.*, 30 F.3d at 151, and therefore appropriately considered "foreign states" for FSIA

purposes.  *See Barot v. Embassy of Republic of Zam.*, No. 13-451, 2014 WL 1400849, at *4

(D.D.C. Apr. 11, 2014) (holding defendant foreign embassy in Washington, D.C., is "foreign

state or [a] political subdivision of a foreign state" for FSIA purposes (alteration in original));

*Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 136, 140 (D.D.C. 2012)

(accepting parties' concession that foreign embassy in Washington, D.C., was "foreign state" for

the purposes of the FSIA); *Ellenbogen v. The Can. Embassy*, No. 05-1553, 2005 WL 3211428, at

*2 (D.D.C. Nov. 9, 2005) ("[I]t is well-settled that an embassy is a 'foreign state' . . . not an

'agency or instrumentality' thereof"); *Int'l Rd. Fed'n v. Embassy of Dem. Republic of the Congo*,

131 F. Supp. 2d 248, 250 (D.D.C. 2001) (holding embassy of foreign state in Washington, D.C.,

a "foreign state" for the purposes of the FSIA and collecting cases); *Underwood v. United*

*Republic of Tanz.*, No. 94-902, 1995 WL 46383, at *2 (D.D.C. Jan. 27, 1995) ("Applying the

categorical approach to the status of the Embassy, we conclude that as a matter of law an

embassy of a sovereign nation is a foreign state which must be served pursuant to § 1608(a).").

The plaintiff offers, without analysis, a single unpublished decision, *TIFA, Ltd. v.*

*Republic of Ghana*, No. 88-1513, 1991 WL 179098 (D.D.C. Aug. 27, 1991), that predates

*Transaero, Inc.*, as support for its contention that the defendant is properly considered an

"instrumentality" under the FSIA and, consequently, subject to the less rigorous service provisions in 28 U.S.C. § 1608(b). *See* Pl.'s Opp'n at 10–11. *Transaero, Inc.* casts significant doubt upon the conclusion reached in *TIFA, Ltd.* that an embassy is a foreign "agency or instrumentality," considering that the D.C. Circuit had yet to adopt the categorical approach applied by the subsequent courts to consider the question when *TIFA, Ltd.* was decided. *See Transaero, Inc.*, 30 F.3d at 152–53. Thus, the Court finds that the defendant, the Embassy of Italy in Washington, D.C., is an "integral part of a foreign state's political structure," making it a "foreign state" for the purposes of the FSIA, subject to the service requirements of 28 U.S.C. § 1608(a). *See id.* at 151.

**D.      The Defendant Was Not Served Properly Under 28 U.S.C. § 1608(a)**

As noted, the plaintiff makes no attempt to show that she complied with 28 U.S.C. § 1608(a) and instead asserts that her service on the defendant was proper under 28 U.S.C. § 1608(b). *See* Pl.'s Opp'n at 10–11. The defendant has submitted an affidavit from the Minister Plenipotentiary for Consular, Home and Justice Affairs for the Embassy of Italy, Dr. Cristiano Maggipinto, stating that "[s]ervice of the Summons and Complaint was apparently attempted" on the defendant "on October 9, 2013, when [the documents] were left at the security desk at the entrance to the Embassy." Def.'s Mot. Ex. 11 (Decl. of Dr. Cristiano Maggipinto ("Maggipinto Decl.")) ¶¶ 1–3, ECF No. 10-12. It is arguable whether such service was proper even under § 1608(b)(2)'s provision allowing service on a "managing or general agent," but there is no evidence that such an attempt at service complies with any of the 28 U.S.C. § 1608(a) requirements. *See generally*, Pl.'s Opp'n.[3] Consequently, the Court finds that the plaintiff failed to effect service properly on the defendant pursuant to § 1608(a), which deprives this Court of

---

[3] The plaintiff's contention that the defendant had actual notice of the suit against it is immaterial for the purposes of 28 U.S.C. § 1608(a). *See, e.g.*, *Barot*, 2014 WL 1400849, at *6 (noting courts must insist on strict adherence to § 1608(a) and dismissing case based on lack of personal jurisdiction based on improper service).

personal jurisdiction over the defendant. *See* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a

foreign state shall exist as to every claim for relief over which the district courts have jurisdiction

under subsection (a) where service has been made under section 1608 of this title."). Therefore,

the Court need not reach the second prong of the FISA inquiry, namely, whether any of the

exceptions to a sovereign's absolute immunity apply.[4]

## IV.     CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is granted and this matter is

dismissed without prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 11, 2014

_____
BERYL A. HOWELL
United States District Judge

---

[4] The defendant notes that its motion to dismiss for lack of personal jurisdiction and improper service is an "alternative means of dismissal," because "there are multiple, independent other bases identified . . . to dismiss the Complaint with prejudice." Def.'s Mem. at 17–18. The Court disagrees. On the sparse record before it, the Court is unable to determine, for instance, whether the plaintiff is a part of the Italian "civil service" under the test articulated in *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 665 (D.C. Cir. 2007); whether the Plan is "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens," 29 U.S.C. § 1003(b)(4); when the plaintiff could have, with reasonable diligence, discovered the alleged underfunding of the Plan for statute of limitations purposes; and whether the defendant's provision of the Plan is "commercial activity" for the purposes of the FSIA. Since the defendant's motion is granted on personal jurisdiction grounds, the insufficiency of the record to resolve these question is ultimately of no consequence.